**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/06/2019

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MONITRONICS INTERNATIONAL, | § | Case No. 19-33650 (DRJ) |
| INC., *et al.*, | § | |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO**
**OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING**
**THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING**
**LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING**
**THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

[Relates to Docket Nos. 14, 91]

Upon the motion, dated June 30, 2019 (the "DIP Motion") of Monitronics International, Inc. (the "Borrower" or "Monitronics"), Security Networks LLC, MIBU Servicer Inc., LiveWatch Security, LLC, Platinum Security Solutions, Inc., Monitronics Canada, Inc., MI Servicer LP, LLC, Monitronics Security LP, and Monitronics Funding LP, (collectively, the "Guarantors," and together with the Borrower, the "Debtors" or "Loan Parties") in the above-captioned chapter 11 cases (collectively, the "Cases"), seeking entry of an interim order (the "Interim DIP Order") and a final order (this "Final DIP Order") pursuant to Sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), 507 and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Monitronics International, Inc. (9343), Security Networks, LLC (8893), MIBU Servicer Inc. (5978), LiveWatch Security, LLC (3274), Platinum Security Solutions, Inc. (3850), Monitronics Canada, Inc. (9545), MI Servicer LP, LLC (N/A), Monitronics Security, LP (6524), and Monitronics Funding, LP (6754). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1990 Wittington Place, Farmers Branch, Texas 75234.

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Local Bankruptcy Rules</u>") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"), *inter alia*:

(i)      authorizing the Debtors to obtain an aggregate principal amount not to exceed $245 million of senior secured postpetition financing on a superpriority basis (the "<u>DIP Facility</u>" and the loans under the DIP Facility, the "<u>DIP Loans</u>") pursuant to the terms and conditions of that certain Secured Superpriority Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), dated as of July 3, 2019, by and among the Borrower, the Guarantors, KKR Credit Advisors (US) LLC, as structuring advisor (in such capacity, the "<u>Structuring Advisor</u>"), KKR Capital Markets LLC as lead arranger and bookrunner (in such capacity, the "<u>Arranger</u>"), Encina Private Credit SPV, LLC, as administrative agent (in such capacity, the "<u>DIP Agent</u>"), as swingline lender (in such capacity, the "<u>Swingline Lender</u>"), and as the letter of credit issuer (in such capacity, the "<u>L/C Issuer</u>"), and each of the lenders party thereto (the "<u>DIP Lenders</u>" and collectively with the DIP Agent, the Structuring Advisor, the Arranger, the Swingline Lender and the L/C Issuer, the "<u>DIP Parties</u>"), substantially in the form attached to the DIP Motion as **<u>Exhibit D</u>**;

(ii)     approving the terms of and authorizing the Debtors party thereto to execute and deliver the DIP Credit Agreement and any other agreements, instruments and documents related thereto (collectively with the DIP Credit Agreement, the "<u>DIP Loan Documents</u>") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)    approving the DIP Facility and granting all obligations owing thereunder and under the DIP Loan Documents to the DIP Parties (collectively, and including all "Obligations"

as described in the DIP Credit Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined below);

(iv)    granting, subject to the Carve-Out in all respects, to the DIP Agent, for the benefit of itself and the DIP Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(v)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the fees and disbursements of the Lender Professionals' (as defined below), respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, this Final DIP Order and the applicable DIP Loan Documents;

(vi)    authorizing the Debtors to use the Pre-Petition Collateral, including the Cash Collateral (each as defined below) of the Pre-Petition Secured Parties under the Pre-Petition Loan Documents (each as defined below), and providing adequate protection to the Pre-Petition Secured Parties for any Diminution in Value (as defined below) of their interests in the Pre-Petition Collateral, including the Cash Collateral from and after the Petition Date;

(vii)    approving the stipulations by the Debtors herein with respect to the Pre-Petition Loan Documents and the liens and security interests arising therefrom;

(viii)   authorizing the Debtors to use the proceeds of the DIP Facility in accordance with both the Budget (as defined below) and the DIP Credit Agreement, including the payment of the Pre-Petition Revolver Payoff Amount to the Initial Administrative Agent (as defined below) upon entry of the Interim DIP Order and the closing and funding of the DIP Facility; and

(ix)     modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final DIP Order.

The Bankruptcy Court having considered, and due and appropriate notice having been given of the DIP Motion, the exhibits attached thereto, the *Declaration of Fred A. Graffam III, Chief Financial Officer and Senior Vice President of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Chad E. Coben In Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing and (VII) Granting Related Relief,* the *Declaration of William Q. Derrough In Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing and (VII) Granting Related Relief,* the DIP Loan Documents, and the evidence submitted and argument made at the interim hearing on July 1, 2019 (the "Interim Hearing") and at the final hearing on August 7, 2019 (the "Final Hearing"); and the

Court having entered the Interim DIP Order on July 2, 2019 [Docket No. 91]; and notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Bankruptcy Court; and it appearing that approval of the final relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and the Bankruptcy Court having determined that the legal and factual bases set forth in the DIP Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE BANKRUPTCY COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

---

[2]   The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      **Disposition.**  The relief requested in the DIP Motion is granted on a final basis in accordance with the terms of this Final DIP Order.  Any objections to the DIP Motion with respect to the entry of this Final DIP Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final DIP Order shall become effective immediately upon its entry and any applicable stay (including under Bankruptcy Rule 6004) is waived to permit such effectiveness.

B.      **Petition Date**.  On June 30, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

C.      **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

D.      **Jurisdiction and Venue**.  This Bankruptcy Court has jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the DIP Motion and granted in this Final DIP Order are Sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and the Local Bankruptcy Rules.

E.      **Committee Formation**.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has not appointed an official committee of

6

unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (to the extent such committee is appointed, the "Committee").

F.      **Notice**.   Proper, timely, adequate, and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final DIP Order shall be required.

G.      **Debtors' Stipulations**.   After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs G(i) through G(x) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)      *Pre-Petition Revolving Facility*.   Pursuant to that certain Credit Agreement dated as of March 23, 2012 (as amended, restated, supplemented, or otherwise modified from time to time, the "Pre-Petition Loan Agreement," and collectively with any other agreements, instruments and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Pre-Petition Loan Documents"), among (a) Monitronics, as the borrower thereunder (the "Pre-Petition Borrower"), (b) the Guarantors party to that certain Guaranty Agreement dated as of March 23, 2012, as amended, restated, supplemented or otherwise modified from time to time (the "Pre-Petition Guarantors," and together with the Pre-Petition Borrower, the "Pre-Petition Loan Parties"), (b) Bank of America, N.A., as administrative agent (in such capacity, the "Initial Administrative Agent"), (c) the revolving lenders party thereto (the "Pre-Petition Revolving Lenders" and together with the Initial Administrative Agent, the "Pre-Petition Revolving Secured

Parties"), and (d) the term loan lenders party thereto (the "<u>Pre-Petition Term Loan Lenders</u>," and together with the Pre-Petition Revolving Secured Parties, the "<u>Pre-Petition Secured Parties</u>"), the Pre-Petition Revolving Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Pre-Petition Borrower pursuant to the Pre-Petition Loan Documents (the "<u>Pre-Petition Revolving Facility</u>").

(ii)     *Pre-Petition Revolving Obligations*.  The Pre-Petition Revolving Facility provided the Borrower with, among other things up to $295,000,000 in aggregate principal amount of Revolving Credit Loans (as defined in the Pre-Petition Loan Agreement).  As of the Petition Date, the aggregate principal amount outstanding under the Pre-Petition Revolving Credit Facility was equal to $181,400,000, including all issued and outstanding letters of credit in the aggregate face amount of $1,000,000 (together with accrued and unpaid interest, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Pre-Petition Borrower's and the Pre-Petition Guarantors' obligations pursuant to, or secured by, the Pre-Petition Loan Documents,  including all "Obligations" as defined in the Pre-Petition Loan Agreement, collectively, the "<u>Pre-Petition Revolving Obligations</u>").

(iii)     *Pre-Petition Term Loan Facility*.  Pursuant to the Pre-Petition Loan Agreement, the Pre-Petition Term Loan Lenders provided secured term loans to the Pre-Petition

Borrower (the "Pre-Petition Term Loan Facility," and together with the Pre-Petition Revolving Facility, the "Pre-Petition Secured Facilities").

    (iv) *Pre-Petition Term Loan Obligations*.  The Pre-Petition Term Loan Facility provided the Pre-Petition Borrower with Term Commitments (as defined in the Pre-Petition Loan Agreement) of up to $1,100,000,000.  As of the Petition Date, the aggregate principal amount outstanding under the Pre-Petition Term Loan Facility was $1,072,500,000 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Pre-Petition Borrower's and Pre-Petition Guarantors' obligations in connection with the Pre-Petition Term Loan Facility pursuant to the Pre-Petition Loan Documents, including all "Obligations" as defined in the Pre-Petition Loan Agreement, the "Pre-Petition Term Loan Obligations," and together with the Pre-Petition Revolving Obligations, the "Pre-Petition Secured Obligations").

    (v) *Pre-Petition Liens and Pre-Petition Collateral*.  As more fully set forth in the Pre-Petition Loan Documents, prior to the Petition Date, the Pre-Petition Borrower and the Pre-Petition Guarantors granted to the Initial Administrative Agent, (a) for the benefit of itself and the other Pre-Petition Revolving Secured Parties a first-priority security interest in and continuing lien (the "Pre-Petition Revolving Liens") on the Collateral (as defined in the Pre-Petition Loan Agreement, the "Pre-Petition Collateral"), and (b) for the benefit of itself and the Pre-Petition Term Loan Lenders, a security interest and continuing lien (the "Pre-Petition Term

Loan Liens" and, together with the Pre-Petition Revolving Liens, the "<u>Pre-Petition Liens</u>") on the Pre-Petition Collateral.

(vi)     *Priority of Pre-Petition Liens*.     The Pre-Petition Loan Documents including that certain Intercreditor and Collateral Agency Agreement, dated as of September 30, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Pre-Petition Intercreditor Agreement</u>") govern, among other things, the respective rights, interests, obligations, priority, and positions of the Pre-Petition Secured Parties with respect to the assets and properties of the Debtors and other obligors, including the Pre-Petition Collateral.  Pursuant to the Pre-Petition Intercreditor Agreement, the Pre-Petition Revolving Obligations constitute "Priority Payment Lien Obligations" (as defined in the Pre-Petition Intercreditor Agreement) that are entitled to be repaid prior to any Pre-Petition Term Loan Obligations.  Each of the Pre-Petition Borrower and Pre-Petition Guarantors executed the Pre-Petition Loan Documents. Pursuant to Section 510 of the Bankruptcy Code, the Pre-Petition Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Pre-Petition Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights and remedies of the Pre-Petition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Final DIP Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered or modified by the terms of this Final DIP Order or the DIP Loan Documents, unless expressly set forth herein.  Each of the Pre-Petition Borrower and Pre-Petition Guarantors acknowledged and agreed to, and is bound by, the Pre-Petition Loan Documents.  The Pre-Petition Loan Documents are binding and

enforceable against the Pre-Petition Borrower, the Pre-Petition Guarantors, the other "Grantors" thereunder and the Pre-Petition Secured Parties in accordance with their terms.

(vii)    *Validity, Extent, Perfection and Priority of Pre-Petition Liens, Pre-Petition Revolving Obligations, and Pre-Petition Term Loan Obligations*.  As of the Petition Date: (a) the Pre-Petition Liens on the Pre-Petition Collateral are valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Pre-Petition Secured Parties for fair consideration and reasonably equivalent value; (b) the Pre-Petition Liens were senior in priority over any and all other liens on the Pre-Petition Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Pre-Petition Loan Documents (solely to the extent any such permitted liens are valid, properly perfected or perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, non-avoidable and senior in priority to the Pre-Petition Liens as of the Petition Date, the "Pre-Petition Priority Liens"); (c) the Pre-Petition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Pre-Petition Loan Parties enforceable in accordance with the terms of the applicable Pre-Petition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, cross-claims, or counterclaims of any kind or nature to any of the Pre-Petition Liens or Pre-Petition Secured Obligations exist, and no portion of the Pre-Petition Liens or Pre-Petition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recovery, attack, effort, rejection, reduction, impairment, or subordination (equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law

equivalents or actions for recovery or disgorgement, against any of the Pre-Petition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Pre-Petition Secured Facilities; (f) the Debtors have waived, discharged, and released any right to challenge any of the Pre-Petition Secured Obligations, the priority of the Pre-Petition Secured Parties' obligations under the Pre-Petition Loan Documents, and the validity, extent, and priority of the liens securing the Pre-Petition Secured Obligations; and (g) the Pre-Petition Secured Obligations constitute allowed, secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code.

(viii)   *Default by the Debtors*.   The Debtors acknowledge and stipulate that the Pre-Petition Loan Parties (a) are in default of their obligations under the Pre-Petition Loan Documents and (b) failed to make certain payments (including interest) due to the Pre-Petition Term Loan Lenders pursuant to the Pre-Petition Loan Documents as of the Petition Date. On July 3, 2019, the Pre-Petition Loan Parties paid all accrued and unpaid prepetition interest on the Pre-Petition Term Loan Facility through the Petition Date to the Initial Administrative Agent, for the benefit of the Pre-Petition Term Loan Lenders (the "Initial Interest Payment").   On July 3, 2019, in accordance with the Interim DIP Order, the Initial Administrative Agent distributed the Initial Interest Payment to the Pre-Petition Term Loan Lenders.

(ix)   *Releases*. The Debtors, on behalf of themselves and their respective estates, hereby absolutely and unconditionally release and forever and irrevocably discharge and acquit the Pre-Petition Secured Parties and their respective affiliates and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys,

accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Released Parties") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, controversies, disputes, obligations, damages, expenses (including, without limitation, reasonable attorneys' fees), liens, accounts, contracts, disputes, liabilities, allegations, suits, controversies, proceedings, actions and causes of action arising prior to the Petition Date (collectively, the "Released Claims") of any kind, nature or description, whether known or unknown, matured or unmatured, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, arising in law or equity, or upon contract or tort or under any state or federal law or regulation or otherwise, arising out of or related to (as applicable) the Pre-Petition Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions reflected thereby and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final DIP Order.

(x)     *Cash Collateral.*  All of the Debtors' cash, and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other cash equivalents, wherever located, whether subject to control agreements or otherwise, whether as original collateral or proceeds of other Pre-Petition Collateral, constitutes "Cash Collateral" of the applicable Pre-Petition Secured Parties within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral") and are subject to valid, perfected, enforceable, first-

priority liens under the Pre-Petition Loan Documents and applicable law, for the benefit of the Pre-Petition Secured Parties.

      **H.**     **<u>Findings Regarding Postpetition Financing</u>**

      (i)     *Request for Postpetition Financing*.  The Debtors seek continued authority to (a) perform under the DIP Facility on the terms described herein and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.  At the Final Hearing, the Debtors sought final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to this Final DIP Order, which is in form and substance reasonably acceptable to the Structuring Advisor, the DIP Lenders holding in excess of fifty percent (50%) of the outstanding loans and commitments under the DIP Facility (the "<u>Required DIP Lenders</u>"), the Required Consenting Term Loan Lenders and the Required Consenting Noteholders (each as defined in the Restructuring Support Agreement).[3]  Notice of the Final Hearing and Final DIP Order was provided in accordance with the Interim DIP Order.

      (ii)     *Priming of the Pre-Petition Liens*.  The priming of the Pre-Petition Liens on the Pre-Petition Collateral under Section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Pre-Petition Secured Parties are each entitled to receive adequate protection as set forth in this Final DIP Order pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value ("<u>Diminution in Value</u>") of each of their respective interests in the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date.  The Pre-Petition Term

---

[3]     "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of May 20, 2019, as may be amended, modified, or supplemented, in accordance with its terms.

Loan Lenders have consented to the priming of the Pre-Petition Liens, which consent would not have been provided absent the restructuring transactions contemplated in the Restructuring Support Agreement and the terms of this Final DIP Order and the DIP Loan Documents, including, without limitation, the Adequate Protection Payments set forth herein. The Initial Administrative Agent and the Pre-Petition Revolving Lenders consent to the Debtors' entry into the DIP Facility.

(iii)     *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors had, and continue to have, an immediate and critical need to obtain the financing pursuant to the DIP Facility and to continue to use the Pre-Petition Collateral (including Cash Collateral) in order to, among other things, (i) refinance all outstanding obligations and terminate all commitments under the Pre-Petition Revolving Facility, (ii) pay the fees, costs and expenses incurred in connection with the Cases, (iii) fund any obligations benefitting from the Carve-Out (without regard to whether such obligations are provided for in the Budget), (iv) permit the orderly continuation of the operation of their businesses, (v) maintain business relationships with customers, vendors and suppliers, (vi) make payroll, and (vii) satisfy other working capital and operational needs.  Access by the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Pre-Petition Collateral, incurrence of new indebtedness under the DIP Loan Documents and the other financial accommodations provided under the DIP Loan Documents is necessary and vital to the preservation and maintenance of the going concern value of the Loan Parties and to a successful reorganization of the Loan Parties.  Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted.  The terms of the DIP Facility are fair and reasonable, reflect each Loan Party's exercise of prudent business judgment, and are

supported by reasonably equivalent value and fair consideration. The adequate protection provided in this Final DIP Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(iv) *No Credit Available on More Favorable Terms*. The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, capital structure, and the circumstances of these Cases, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. Further, the Pre-Petition Secured Parties would not consent to the Debtors incurring debtor-in-possession financing, the priming of their Pre-Petition Liens or the use of Cash Collateral, unless provided by the DIP Lenders on the terms of the DIP Facility. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims and liens, and (3) the other protections set forth in this Final DIP Order.

(v) *Use of Proceeds of the DIP Facility*. As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash

Collateral, the DIP Agent, the DIP Lenders, and the Pre-Petition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Final DIP Order, the DIP Loan Documents and in accordance with the Budget (as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and with the reasonable consent of the Required DIP Lenders, the Required Consenting Term Loan Lenders and the Required Consenting Noteholders (each as defined in the Restructuring Support Agreement) and subject to such variances as permitted in the DIP Loan Documents, the "Budget").[4]

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Parties, and the Pre-Petition Secured Parties have agreed that, as of and commencing on the date of entry of this Final DIP Order, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Final DIP Order and the DIP Loan Documents.

I.    **Adequate Protection**.  The Successor Administrative Agent, the Pre-Petition Term Loan Lenders, the Initial Administrative Agent and the Pre-Petition Revolving Lenders are each entitled to receive the adequate protection provided in this Final DIP Order as and to the extent set forth herein pursuant to Sections 361, 363, 364 and 507(b) of the Bankruptcy Code.

J.    **Sections 506(c) and 552(b)**.  In light of (i) the DIP Agent's and the DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve-Out and (ii) the Pre-Petition Secured Parties' agreement that, with respect to the Pre-Petition Collateral, their liens shall be subject to the Carve-Out and subordinate to the DIP Liens, (a)  the Pre-Petition

---

[4]        A copy of the Budget is attached hereto as **Exhibit A**.

Secured Parties are each entitled to a waiver of any "equities of the case" exception under Section 552(b) of the Bankruptcy Code, and (b)  the DIP Parties and Pre-Petition Secured Parties are each entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

K.       **Good Faith of the DIP Agent and Lenders**.

(i)       *Willingness to Provide Financing*.  The DIP Lenders have committed to provide financing to the Debtors subject to: (a) entry of this Final DIP Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (c) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (d) findings by this Bankruptcy Court that the DIP Facility is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final DIP Order and the DIP Loan Documents will have the protections provided by Section 364(e) of the Bankruptcy Code.

(ii)      *Business Judgment*.  Based on the DIP Motion, the declarations filed in support of the DIP Motion, and the record presented to the Bankruptcy Court at the Interim Hearing and the Final Hearing, (i) the terms of the financing embodied in the DIP Facility, including the fees, expenses and other charges paid and to be paid thereunder or in connection therewith, (ii) the adequate protection authorized by this Final DIP Order and DIP Loan Documents and (iii) the terms on which the Loan Parties may continue to use the Pre-Petition Collateral (including Cash Collateral), in each case pursuant to this Final DIP Order and the DIP Loan Documents, are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing (and terms) available under the circumstances.

(iii)     *Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Parties, certain of the Pre-Petition Secured Parties and certain of the holders of the Senior Unsecured Notes (as defined in the DIP Credit Agreement), with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, the DIP Lenders, and the Pre-Petition Secured Parties within the meaning of Section 364(e) of the Bankruptcy Code.

L.     **Immediate Entry**.  Sufficient cause exists for immediate entry of this Final DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Bankruptcy Rules.

M.     **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion was provided by the Debtors to (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors; (c) the agent for the Debtors' prepetition term loan and revolving credit facility; (d) counsel for the agent for the Debtors' prepetition term loan and revolving credit facility; (e) counsel for the Ad Hoc Lender Group (as defined in the Restructuring Support Agreement); (f) the indenture trustee for the Debtors' prepetition senior unsecured notes; (g) counsel for the Ad Hoc Group of Noteholders; (h) counsel for Ascent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature

of the relief requested, no other notice is required in connection with the relief set forth in this Final DIP Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Bankruptcy Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      <u>DIP Financing Approved</u>.   The DIP Motion is granted, entry into the debtor-in-possession financing is authorized and approved, and the use of Cash Collateral on a final basis is authorized, in each case, subject to the terms and conditions set forth in this Final DIP Order.  All objections to this Final DIP Order to the extent not withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final DIP Order shall become effective immediately upon its entry.

**<u>DIP Facility Authorization</u>**

2.      <u>Authorization of the DIP Financing</u>.   The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final DIP Order and the DIP Loan Documents, and to execute, deliver and perform under all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens (as defined below) described in and provided for by this Final DIP Order and the DIP Loan Documents.  The Debtors are hereby authorized and directed to pay, in accordance with this Final DIP Order, the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become

due, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees and the reasonable and documented fees and disbursements of the DIP Parties' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before, on, or after the Petition Date, whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final DIP Order or the DIP Loan Documents; *provided*, *however*, that the payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of paragraph 36. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final DIP Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent legal, valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. Each officer of a Debtor acting individually is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

3. <u>Authorization to Borrow</u>. In order to prevent immediate and irreparable harm to the Debtors' estates, subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents and this Final DIP Order, the Debtors are authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement on a final basis in an aggregate principal or face amount not to exceed $245 million, together with

applicable interest, expenses, fees and other charges payable in connection with the DIP Credit Facility, subject in each case to any limitations on borrowing under the DIP Loan Documents, which borrowings shall be used for all purposes permitted under the DIP Loan Documents, including, without limitation, to cash collateralize Pre-Petition Letters of Credit,[5] to provide working capital for the Loan Parties and to pay interest, fees, costs, charges and expenses, in each case, in accordance with this Final DIP Order, the DIP Loan Documents and the Budget, *provided that*, for the avoidance of doubt, the use of DIP Collateral (including, without limitation, the proceeds thereof and Cash Collateral) to pay Allowed Professional Fees of the Debtor Professionals or fund obligations benefitting from the Carve-Out shall not be subject in any way to the Budget or any covenants related thereto.  Any amounts repaid under the DIP Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Final DIP Order.

4.      <u>DIP Obligations</u>.  The DIP Loan Documents and this Final DIP Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). From and after the date of the entry of the Interim DIP Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, including, without limitation, all principal, accrued

---

[5]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion or the DIP Credit Agreement as applicable.

interest, costs, charges, fees, expenses and other amounts under the DIP Loan Documents. The Loan Parties shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date, except as provided in paragraph 34 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Loan Documents (including any DIP Obligation or DIP Liens), and subject to paragraph 42), including in connection with any adequate protection provided to the Pre-Petition Secured Parties hereunder, shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under Sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      DIP Collateral.  In order to secure the DIP Obligations, from and after the date of the entry of the Interim DIP Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of, with respect to the DIP Obligations, each of the Loan Parties (the "DIP Collateral"), including without limitation: (a) all Accounts; (b) all Chattel Paper; (c) those certain Commercial Tort Claims set forth on Schedule 12.01(a)(iii) to the DIP Credit Agreement;

(d) all Deposit Accounts; (e) all Documents; (f) all Equipment; (g) all Fixtures; (h) all General

Intangibles; (i) all Instruments; (j) all Intellectual Property; (k) all Inventory; (l) all Investment

Property; (m) all Letter-of-Credit Rights (as defined in the Uniform Commercial Code) (other

than the Pre-Petition Letters of Credit issued  by Bank of America in its capacity as L/C Issuer

under the Pre-Petition Loan Documents); (n) all Money; (o) all Pledged Equity Collateral; (p) all

Supporting Obligations; (q) owned and leased real property; (r) leasehold interests; (s) the

proceeds of causes of action pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance

Proceeds"); (t) all Accessions and all Proceeds of any and all of the foregoing; and (u) the

Debtors' rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof and

including all DIP Collateral that was not otherwise subject to valid, perfected, enforceable and

unavoidable liens on the Petition Date.

    6. <u>DIP Liens</u>. The DIP Liens securing the DIP Obligations are valid,

automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage,

collateral interest, lien or claim to or on any of the DIP Collateral, except that the DIP Liens shall

not encumber the Professional Fees Account (as defined below) or the funds held therein in any

way, shall be subject to the Carve-Out in all respects, and shall otherwise be junior only to

the Pre-Petition Priority Liens.  Other than as set forth herein or in the DIP Loan Documents, the

DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore

or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable

against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of

the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case),

and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be

subject to Sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and

preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.  For the avoidance of doubt, the DIP Liens are junior in all respects to (a) the Carve-Out with respect to the DIP Collateral and (b) the Priority Pre-Petition Revolver Indemnity Lien (as defined below) with respect to the Pre-Petition Revolver Indemnity and Fee Reserve (and the amounts therein) and the L/C Cash Collateral.

   7. <u>Superpriority Claims</u>.  Subject in all respects to the Carve-Out, from and after the entry of the Interim DIP Order, the DIP Agent and the DIP Lenders were granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations: except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code. Notwithstanding the foregoing, the DIP Superpriority Claims shall (i) be *pari passu* with each other, without otherwise impairing the lien priorities as set forth herein; (ii) shall not have recourse to funds held in the Professional Fees Account; (iii) shall not have recourse to the Pre-Petition Revolver Indemnity and Fee Reserve (or the amounts therein) or the L/C Cash Collateral prior to the return of such amounts to the Debtors' in accordance with paragraph 19 of this Final DIP Order; and (iv) junior to the Carve-Out in all respects.

8.    <u>No Obligation to Extend Credit</u>.  The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal or extension of such letter of credit or bankers' acceptance under the DIP Loan Documents and this Final DIP Order have been satisfied in full or waived by the DIP Agent (and/or Structuring Advisor and/or Required DIP Lenders, as applicable) in accordance with the terms of the DIP Credit Agreement.

9.    <u>Use of Proceeds of DIP Facility</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final DIP Order and the DIP Loan Documents, and in compliance with the Budget and the terms and conditions in this Final DIP Order and the DIP Loan Documents.

10.    <u>Repayment of Pre-Petition Revolving Obligations</u>.  The repayment of the Pre-Petition Revolving Obligations outstanding as of the Petition Date in connection with the Debtors' entry into the DIP Facility is approved on a final basis.  In accordance with the Interim DIP Order, the Debtors previously (a) executed and delivered the Pre-Petition Revolver Payoff Letter (as defined below); (b) used the proceeds of the DIP Financing to (i) pay in full in cash all outstanding Pre-Petition Revolving Obligations, including all principal, interest, fees and expenses due and chargeable under the Pre-Petition Revolving Facility through the date of payment; and (ii) cash collateralize Pre-Petition Letters of Credit (as defined in the DIP Credit Agreement) in an amount equal to 103% of the face amount thereof (the "<u>L/C Cash Collateral</u>"); (c) funded for the benefit of the Initial Administrative Agent and the Pre-Petition Revolving Lenders, $250,000 (the "<u>Pre-Petition Revolver Indemnity and Fee Reserve</u>") into a non-interest bearing account maintained at Bank of America, N.A. to secure the Pre-Petition Revolver

Reimbursement and Indemnity Obligations; and (d) paid such other reasonable amounts in respect of or related to the Pre-Petition Revolving Facility, as more fully set out in the Pre-Petition Revolver Payoff Letter.  The amounts in clauses (a)-(d) of this paragraph 10 shall be referred to in this Final DIP Order as, collectively, the "Pre-Petition Revolver Payoff Amount", and the date of the satisfaction of the Pre-Petition Revolver Payoff Amount, shall be referred to as the "Pre-Petition Revolver Payoff Date".  As required by the Interim DIP Order, the Initial Administrative Agent delivered to the Debtors a letter (including any documents related thereto, the "Pre-Petition Revolver Payoff Letter") which set forth the calculation of the Pre-Petition Revolver Payoff Amount.  The Pre-Petition Revolver Payoff Amount is hereby approved on a final basis. For the avoidance of doubt, nothing in this Final DIP Order shall (x) discharge or otherwise impair the Pre-Petition Revolver Reimbursement and Indemnity Obligations, which shall survive the repayment of the Pre-Petition Revolving Obligations and the termination of the Revolving Credit Commitments (as defined in the Pre-Petition Loan Agreement), or (y) otherwise impair or modify the provisions of the Pre-Petition Loan Agreement relating to the Term Facility (as defined in the Pre-Petition Loan Agreement).

11.     Resignation of Initial Administrative Agent and Appointment of Successor Administrative Agent.   On the Closing Date, the Initial Administrative Agent resigned as administrative agent and L/C Issuer under the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents, and Cortland Capital Market Services LLC, as successor administrative agent (the "Successor Administrative Agent") was appointed as Administrative Agent (as defined in the Pre-Petition Loan Agreement) under the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents (such appointment, and the Successor Administrative Agent's acceptance thereof, the "Appointment") in accordance with the terms of that certain

*Agency Resignation, Appointment and Assumption Agreement*, (the "Agency Resignation") which was entered into on the Closing Date by the Initial Administrative Agent, the Successor Administrative Agent, and the Debtors and that certain *Amendment No. 8 to Credit Agreement and Consent to Agency Resignation and Appointment Agreement*, which was entered into on the Closing Date by the Debtors, the Successor Administrative Agent, and the Pre-Petition Term Loan Lenders party thereto, constituting the "Required Lenders" (as defined in the Pre-Petition Loan Agreement).   Effective immediately upon the Successor Administrative Agent's Appointment, it (a) succeeded to, and is vested with, all of the rights, powers, privileges, responsibilities, obligations, and duties of the Initial Administrative Agent under the Pre-Petition Loan Agreement and each of the other Pre-Petition Loan Documents; *provided, however,* that nothing in the Interim DIP Order or this Final DIP Order impaired or shall impair the Initial Administrative Agent's rights to exercise the Agent Retained Rights (as defined in the Agency Resignation); (b) was deemed to be, a "Pre-Petition Secured Party" under and as defined in this Final DIP Order for all purposes hereunder; (c) succeeded to, and is vested with, the Pre-Petition Term Loan Liens and all of the other rights, powers, privileges, responsibilities, obligations, duties, title, assignments and interests (including security interests) granted to the Initial Administrative Agent under the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents, which rights, powers, privileges, responsibilities, obligations, duties, title, assignments and interests were transferred in accordance with the terms of the Agency Resignation; and (d) succeeded to, and is vested with, all of the rights, powers, privileges, responsibilities, obligations, duties, and powers granted by this Final DIP Order that prior to the Successor Agent's Appointment, were granted to the Initial Administrative Agent for the benefit of the Initial Administrative Agent (in its capacity as Administrative Agent for the Pre-Petition

Term Loan Facility) and the Pre-Petition Term Loan Lenders.  For the avoidance of doubt, in no event shall the Successor Administrative Agent have any rights or claim to (v) the Pre-Petition Revolver Indemnity and Fee Reserve, (w) the L/C Cash Collateral, (x) the Priority Pre-Petition Revolver Indemnity Lien, (y) the Pre-Petition Revolver Adequate Protection Lien, or (z) the Pre-Petition Revolver Adequate Protection Superpriority Claim.  Effective as of the Pre-Petition Revolver Payoff Date, the Initial Administrative Agent had no further duties or obligations under the Pre-Petition Loan Agreement or other Pre-Petition Loan Documents, but continues to be entitled to those rights (including reimbursement and indemnification rights) under the Pre-Petition Loan Agreement or other Pre-Petition Loan Documents (as in effect immediately prior to the Pre-Petition Revolver Payoff Date) that survive termination of the Revolving Loan Commitments (as defined in the Pre-Petition Loan Agreement) or the resignation of the Initial Administrative Agent.

12.     No Monitoring Obligation.  No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any DIP Party's use of the DIP Facility, and each DIP Lender and the DIP Agent may rely upon each DIP Party's representation that the use of the DIP Facility at any time is in accordance with the requirements of this Final DIP Order and the DIP Loan Documents.

**Authorization to Use Cash Collateral**

13.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final DIP Order, the DIP Facility and the DIP Loan Documents and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Date. Nothing in this Final DIP Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other

proceeds resulting therefrom, except as permitted by this Final DIP Order, the DIP Facility, the DIP Loan Documents, and in accordance with the Budget, as applicable.

14.     <u>Term Loan Adequate Protection Liens</u>.   Subject in all respects to the Carve-Out, pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, to the extent of any Diminution in Value of the Pre-Petition Term Loan Lenders' interests in the Pre-Petition Collateral from and after the Petition Date, as adequate protection of such interests, the Debtors, subject to paragraph 42, hereby grant to the Successor Administrative Agent (effective and perfected upon the date of the Interim DIP Order), for the benefit of the Administrative Agent (as defined in the Pre-Petition Loan Agreement) and the Pre-Petition Term Loan Lenders, continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected replacement security interests in and liens on the DIP Collateral (the "<u>Term Loan Adequate Protection Liens</u>"); *provided* that no Adequate Protection Liens shall encumber the Professional Fees Account or funds held therein in any way.

15.     <u>Priority of Term Loan Adequate Protection Liens</u>.   The Term Loan Adequate Protection Liens shall be subject to the Carve-Out and shall otherwise be junior only to: (1) Pre-Petition Priority Liens; (2) the DIP Liens; (3) the Priority Pre-Petition Revolver Indemnity Lien; and (4) the Pre-Petition Revolver Adequate Protection Liens.  The Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Loan Parties' assets.  Except as provided herein, the Term Loan Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Term Loan Adequate Protection Liens

shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Pre-Petition Liens or the Term Loan Adequate Protection Liens.

16.    Term Loan Adequate Protection Superpriority Claims.  Subject in all respects to the Carve-Out, as further adequate protection of the interests of the Successor Administrative Agent and Pre-Petition Term Loan Lenders in the Pre-Petition Collateral against any Diminution in Value of such interests in the Pre-Petition Collateral from and after the Petition Date, the Successor Administrative Agent (effective and perfected upon the date of the Interim DIP Order), for the benefit of the Administrative Agent (as defined in the Pre-Petition Loan Agreement), and the Pre-Petition Term Loan Lenders, is hereby granted on a final basis as and to the extent provided by Section 507(b) of the Bankruptcy Code allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (the "Term Loan Adequate Protection Superpriority Claims").

17.    Priority of the Term Loan Adequate Protection Superpriority Claims. Subject in all respects to the Carve-Out, and except as otherwise set forth herein, the Term Loan Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided*, *however*, that the Term Loan Adequate Protection Superpriority Claims shall be *pari passu* with one another, subject to the Carve-Out and junior to the DIP Superpriority Claims.

Notwithstanding anything herein to the contrary, the Term Loan Adequate Protection Superpriority Claims shall not have recourse to (a) the Professional Fees Account or funds held therein or (b) the Pre-Petition Revolver Indemnity and Fee Reserve (or the amounts therein) or the L/C Cash Collateral prior to the return of such amounts to the Debtors in accordance with paragraph 19 of this Final DIP Order.

18. Adequate Protection Payments and Protections for the Initial Administrative Agent, Successor Administrative Agent and the Pre-Petition Term Loan Lenders. Subject to paragraph 42, as further adequate protection of the interests of the Successor Administrative Agent and the Pre-Petition Term Loan Lenders in the Pre-Petition Collateral against any Diminution in Value of such interests in the Pre-Petition Collateral from and after the Petition Date, the Debtors are authorized and directed to pay in cash, without the need for the filing of formal fee applications, (i) promptly when invoiced, the reasonable, documented and invoiced prepetition and postpetition fees, expenses, and disbursements incurred by (A) the Initial Administrative Agent and its counsel, (B) the Successor Administrative Agent and its counsel, and (C) the Pre-Petition Term Loan Lenders and their counsel and financial advisors, but limited with respect to the fees, expenses, and disbursements of counsel and financial advisors to the Pre-Petition Term Loan Lenders to those of the Ad Hoc Lender Group (as defined in the Restructuring Support Agreement), and (ii) current payment of interest on the Pre-Petition Term Loan Facility calculated at the Base Rate plus the Applicable Rate for Base Rate Loans (each as defined in the Pre-Petition Loan Agreement) for the period from June 28, 2019 through and including July 28, 2019, and calculated at the Eurodollar Rate (as defined in the Pre-Petition Loan Agreement) for a two-month Interest Period (as defined in the Pre-Petition Loan Agreement) beginning on July 29, 2019 plus the Applicable Rate for Eurodollar Rate Loans

(each as defined in the Pre-Petition Loan Agreement) from July 29, 2019 on, in each case, when due under the Pre-Petition Loan Agreement but in no event later than the Effective Date (as defined in the Plan)[6] (all payments provided in this paragraph, together with the Initial Interest Payment, the "Term Loan Adequate Protection Payments").  Nothing herein shall affect the Pre-Petition Term Loan Lenders' right to seek interest at the Default Rate (as defined in the Pre-Petition Loan Agreement) in the event that the Effective Date (as defined in the Plan) does not occur in accordance with the milestones set forth in the Restructuring Support Agreement and the Restructuring Support Agreement is terminated as a result thereof, and the rights of all other parties to object to any such requests are expressly reserved.  The Term Loan Adequate Protection Payments are approved on a final basis.

19.    Adequate Protection for the Initial Administrative Agent and the Pre-Petition Revolving Lenders.

(i)    The Initial Administrative Agent and the Pre-Petition Revolving Lenders are entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Pre-Petition Collateral from and after the Petition Date on a final basis.  Pursuant to Sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the Initial Administrative Agent, on behalf of itself and the Pre-Petition Revolving Lenders received upon entry of the Interim DIP Order and hereby receive on a final basis, (a) the benefit of the Pre-Petition Revolver Indemnity and Fee Reserve and the L/C Cash Collateral; (b) an exclusive first priority lien (the "Priority Pre-Petition Revolver Indemnity Lien") on the L/C Cash Collateral and the Pre-Petition Revolver Indemnity and Fee Reserve (and all amounts therein), which was effective and perfected upon the entry of the Interim DIP Order; (c) a

---

[6] The "Plan" means the *Joint Partial Prepackaged Plan of Reorganization of Monitronics International, Inc. and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, dated June 3, 2019, as it may be amended, modified or supplemented from time to time.

replacement lien on the DIP Collateral (the "Pre-Petition Revolver Adequate Protection Lien" and, together with the Term Loan Adequate Protection Liens, the "Adequate Protection Liens"), which was effective and perfected upon the entry of the Interim DIP Order and which shall be subject to the Carve-Out and the priorities set forth herein; and (d) an allowed superpriority administrative expense claim (the "Pre-Petition Revolver Adequate Protection Superpriority Claim" and together with the Term Loan Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims"), which shall be subject to the Carve-Out and the priorities set forth herein. The adequate protection provided to the Initial Administrative Agent and the Pre-Petition Revolving Lenders pursuant to this paragraph 19 is hereby approved on a final basis.

        (ii)    *Pre-Petition Revolver Indemnity and Fee Reserve*.   The Pre-Petition Revolver Indemnity and Fee Reserve, shall secure (x) any costs or expenses incurred in connection with or related to the protection of the rights and interests of the Initial Administrative Agent or the Pre-Petition Revolving Lenders or any Challenge (as defined below) with respect to the Pre-Petition Loan Agreement, any other Pre-Petition Loan Documents, the Pre-Petition Revolving Facility, the Pre-Petition Revolving Obligations, the Pre-Petition Revolving Liens, the Initial Administrative Agent and/or the Pre-Petition Revolving Lenders (including any contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Pre-Petition Loan Agreement, any other Pre-Petition Loan Documents, or the Pre-Petition Revolving Facility, and any fees and expenses for attorneys and other professionals), (y) any and all other reasonable costs and expenses incurred prior to the Pre-Petition Revolver Payoff Date that were not otherwise reflected in the Pre-Petition Revolver Payoff Amount, and (z) any Pre-Petition Revolving Obligations that remain outstanding

following the Pre-Petition Revolver Payoff Date (collectively, the "Pre-Petition Revolver Reimbursement and Indemnity Obligations"). The Initial Administrative Agent may apply amounts in the Fee and Indemnity Reserve against the Pre-Petition Revolver Reimbursement and Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, a Committee (if appointed), or any other parties in interest and without further order of this Court; provided, that (i) any such claims shall be subject to (a) the terms of the Pre-Petition Loan Agreement or other Pre-Petition Loan Documents (including with respect to application of proceeds) and (b) the rights of parties in interest with requisite standing to object to any claim(s) are hereby reserved in accordance with paragraph 42 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any disputed claim(s). Any amounts remaining in the Indemnity and Fee Reserve shall be released for the Debtors' general use upon the receipt by the Initial Administrative Agent and the Pre-Petition Revolving Lenders of releases (the "Pre-Petition Revolver Facility Releases") with respect to any claims arising out of or related to the Pre-Petition Loan Agreement, any other Pre-Petition Loan Document, the Pre-Petition Revolving Facility, the Pre-Petition Revolving Obligations, or the Pre-Petition Revolving Liens from (i) the Debtors and their estates and (ii) a Committee (if appointed) or any party that has been granted standing pursuant to paragraph 42 of this Final DIP Order, which Pre-Petition Revolver Facility Releases shall be deemed delivered upon the later of (a) the occurrence of the Challenge Period Termination Date (as defined below) or (b) the occurrence of the Effective Date for a plan of reorganization that contains releases and discharges of claims and liabilities for the Initial Administrative Agent and the Pre-Petition Revolving Lenders in form and substance acceptable to such parties in their reasonable discretion (it being agreed that the releases contained in the

version of the plan of reorganization filed on the Petition Date satisfies the requirements of this clause (b)).

(iii)    *L/C Cash Collateral.*    The Initial Administrative Agent shall continue to be entitled to receive the benefit of the L/C Cash Collateral until the Pre-Petition Letters of Credit are returned to it undrawn.  The L/C Cash Collateral shall secure the Debtors' obligations arising under or in connection with outstanding Pre-Petition Letters of Credit.  The Initial Administrative Agent may apply the L/C Cash Collateral in accordance with the provisions of the relevant Letter of Credit or cash management agreement, as applicable, without further notice to or consent from the Debtors, a Committee (if appointed), or any other parties-in-interest and without further order of this Court.  The L/C Cash Collateral shall be released for the Debtors' general use upon the return of the undrawn Pre-Petition Letters of Credit to the Initial Administrative Agent in accordance with the Cash Collateral Agreement (as defined in the Pre-Petition Revolver Payoff Letter).

(iv)    *Priority of the Priority Pre-Petition Revolver Indemnity Lien and the Pre-Petition Revolver Adequate Protection Lien.*    The Priority Pre-Petition Revolver Indemnity Lien in favor of the Initial Administrative Agent shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim to or on the Pre-Petition Revolver Indemnity and Fee Reserve and the L/C Cash Collateral, including, the Carve-Out, the DIP Liens, the Term Loan Adequate Protection Liens, and the Pre-Petition Term Loan Liens. The Pre-Petition Revolver Adequate Protection Lien in favor of the Initial Administrative Agent shall be subject to the Carve-Out and shall otherwise be junior only to: (a) the DIP Liens, and (b) the Permitted Prior Liens.  The Pre-Petition Revolver Adequate Protection Lien shall be senior to all other security interests in or liens on the DIP Collateral or the Pre-Petition Collateral.  Except

as provided herein, the Pre-Petition Revolver Adequate Protection Lien shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Pre-Petition Revolver Adequate Protection Lien shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Pre-Petition Liens or the Pre-Petition Revolver Adequate Protection Lien.

       (v)    *Pre-Petition Revolver Adequate Protection Superpriority Claims*. As further adequate protection of the interests of the Initial Administrative Agent and the Pre-Petition Revolving Lenders in the Pre-Petition Collateral against any Diminution in Value of such interests in the Pre-Petition Collateral from and after the Petition Date, the Initial Administrative Agent, on behalf of itself and the Pre-Petition Revolving Lenders, shall also be granted, as and to the extent provided by Section 507(b) of the Bankruptcy Code, the Pre-Petition Revolver Adequate Protection Superpriority Claims in each of the Cases and any Successor Cases.  The Pre-Petition Revolver Adequate Protection Superpriority Claims shall be subject to the Carve-Out and junior to the DIP Superpriority Claims and shall otherwise have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Pre-Petition Revolver Adequate Protection Superpriority Claims shall be *pari passu* with one another, subject to the Carve-Out and junior to

the DIP Superpriority Claims. Notwithstanding anything herein to the contrary, the Pre-Petition Revolver Adequate Protection Superpriority Claims shall not have recourse to the Professional Fees Account or funds held therein.

20. <u>Adequate Protection Reservation</u>. Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Pre-Petition Collateral during the Cases or any Successor Cases. The receipt by the Pre-Petition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Pre-Petition Secured Parties are adequately protected. Further, this Final DIP Order shall not prejudice or limit the rights of the Pre-Petition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, subject to the terms of the Restructuring Support Agreement.

**Provisions Common to DIP Financing and Use of Cash Collateral**

21. <u>Amendment of the DIP Loan Documents</u>. The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate or other fees payable under the DIP Loan Documents (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) shortens the Maturity Date, (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default, prepayment provision, termination provision, case milestone or provision relating to asset sales, (v) increases existing

fees or adds new fees, or (vi) modifies the definition of "Borrowing Base" (or the definitions used therein in a manner that materially modifies the terms of the Borrowing Base) in the DIP Credit Agreement, *provided, however*, that notice of any proposed modification or amendment to the DIP Documents pursuant to provisions (i) through (vi) above shall be provided to counsel for the Committee, if any, counsel for the Ad Hoc Group of Noteholders, and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object, in writing, to such modification or amendment.  If the Committee, if any, the Ad Hoc Group of Noteholders, or the U.S. Trustee timely objects to any modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of the Court.  No waiver, modification, or amendment of any of the provisions of the DIP Documents shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the Required DIP Lenders under the DIP Credit Agreement) and, to the extent provided for herein, approved by this Bankruptcy Court.

22.    <u>Budget Maintenance</u>.  The use of borrowings and letters of credit under the DIP Facility shall be in accordance with the Budget and the terms and conditions set forth in the DIP Loan Documents.  The Budget and any modification to, or amendment or update of, the Budget shall be subject to the approval of, and in form and substance acceptable to the Structuring Advisor, the Required Consenting Term Loan Lenders and the Required Consenting Noteholders (each as defined in the Restructuring Support Agreement) in accordance with the DIP Loan Documents.

23.    <u>Budget Compliance</u>.  The use of borrowings and letters of credit under the DIP Facility shall be in accordance with the Budget and the DIP Loan Documents; *provided, however*, that, notwithstanding anything to the contrary herein, in the case of the (i) fees, costs

and expenses of the Lender Professionals and (ii) Professional Fees and obligations benefitting from the Carve-Out, the Debtors shall pay such amounts in accordance with the DIP Loan Documents and this Final DIP Order without being limited by the Budget.

24.     <u>Modification of Automatic Stay</u>.    The automatic stay imposed under Section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate the terms and provisions of this Final DIP Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, the Priority Pre-Petition Revolver Indemnity Lien, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Structuring Advisor, the Initial Administrative Agent, and the Successor Administrative Agent may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Parties and the Pre-Petition Secured Parties under the DIP Loan Documents, the DIP Facility and this Final DIP Order; and (d) authorize the Debtors to pay, and the DIP Parties and the Pre-Petition Secured Parties to retain and apply, payments made in accordance with the terms of this Final DIP Order, the DIP Loan Documents and the Budget.

25.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final DIP Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Carve-Out, the Professional Fees Account, the DIP Liens, the Priority Pre-Petition Revolver Indemnity Lien, and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance

with applicable non-bankruptcy law) the DIP Liens, the Priority Pre-Petition Revolver Indemnity Lien,  and the Adequate Protection Liens or to entitle the DIP Agent, the DIP Lenders and the Pre-Petition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent, the Initial Administrative Agent and the Successor Administrative Agent are authorized to file, as each deems necessary or advisable, or, with respect to the Successor Administrative Agent, at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement), such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, the Priority Pre-Petition Revolver Indemnity Lien, and the Adequate Protection Liens, respectively, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, the Priority Pre-Petition Revolver Indemnity Lien, or the Adequate Protection Liens; *provided further*, that the Initial Administrative Agent shall not file, nor have any authority to file, any financing statements, security agreements, mortgages, notices of liens, and other similar documents to evidence the Term Loan Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent, the Initial Administrative Agent, and the Successor Administrative Agent all such financing statements, mortgages, notices and other documents as the DIP Agent, the Initial Administrative Agent and the Successor Administrative Agent may reasonably request.  The DIP Agent, the Initial Administrative Agent and the Successor Administrative Agent, in its discretion, or in the case of the Successor Administrative Agent, at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement), may each file a photocopy of this Final DIP

Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.  To the extent that the Administrative Agent (as defined in  the Pre-Petition Loan Agreement) is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements or any other Pre-Petition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be, and be deemed to be, the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Administrative Agent (as defined in the Pre-Petition Loan Agreement) is authorized to serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final DIP Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party. The automatic stay of Section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent, the Initial Administrative Agent and/or the Successor Administrative Agent to take all actions, as applicable, referenced in this paragraph 25.

26.   <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of entry of the Interim DIP Order, and subject to the Carve-Out in all respects, the Debtors shall apply all net proceeds of dispositions of DIP Collateral in accordance with the terms of the DIP Credit Agreement, the Interim DIP Order, and this Final DIP Order; *provided* that, if the DIP

Obligations are paid in full, such proceeds shall be treated as the Cash Collateral of the Pre-Petition Secured Parties.

27.     Protections of Rights of DIP Agent, Lenders and Pre-Petition Secured Parties.

(i)     Unless (a) the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders), and (b) the Successor Administrative Agent(acting at the direction of the "Required Lenders" as defined in the Pre-Petition Loan Agreement) shall have provided their prior written consent or all DIP Obligations and all Pre-Petition Secured Obligations have been indefeasibly paid in full in cash and all commitments thereunder are terminated, there shall not be entered in any of these Cases or any Successor Cases an order entered (including an order confirming any plan of reorganization or liquidation) that authorizes any of the following:  (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Pre-Petition Collateral that is entitled to administrative priority status superior to or *pari passu* with the DIP Liens (unless expressly permitted under the DIP Loan Documents or this Final DIP Order (including the Carve-Out)), the DIP Superpriority Claims (unless expressly permitted under the DIP Loan Documents or this Final DIP Order (including the Carve-Out)), the Pre-Petition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents, this Final DIP Order and the Budget; or (iii) any modification of any of the DIP Parties', or the Pre-Petition Secured Parties' rights under this Final DIP Order, the DIP Loan Documents or the Pre-Petition Loan Documents with respect to any DIP Obligations or Pre-

Petition Secured Obligations: provided, further, that it shall be an Event of Default under the DIP Facilities if any such order is entered.

(ii)     The Debtors will (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) cooperate with, consult with, and provide to the DIP Agent, the Structuring Advisor, and the Successor Administrative Agent all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by the DIP Agent, the Structuring Advisor and the Successor Administrative Agent) to provide under the DIP Loan Documents or the provisions of this Final DIP Order or as otherwise reasonably requested by the DIP Agent, the Structuring Advisor, or the Successor Administrative Agent, (iii) permit consultants, advisors and other representatives (including third party representatives) of the DIP Agent, the Structuring Advisor, and the Successor Administrative Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees, independent public accountants and other professional advisors as and to the extent required by the DIP Loan Documents or the Pre-Petition Loan Documents, (iv) permit the DIP Agent, the Structuring Advisor, and the Successor Administrative Agent, and their respective consultants, advisors and other representatives, to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit the DIP Agent and the Successor Administrative Agent to conduct, at their reasonable direction and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals in respect of any or all of the DIP Collateral and

the Pre-Petition Collateral, in each case, in accordance with the DIP Loan Documents and the Pre-Petition Loan Documents.

(iii)    No Debtor shall object to any DIP Party or any Pre-Petition Secured Party (or any of its respective designees, affiliates or assignees) credit bidding up to the full amount of the applicable outstanding DIP Obligations or Pre-Petition Secured Obligations owed to such party, in each case, including any accrued interest and expenses, in a sale of any DIP Collateral or Pre-Petition Collateral, as applicable, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, subject, in each case, to the provision of consideration sufficient to pay in full in cash any Pre-Petition Priority Liens on any collateral that is subject to the credit bid.  Any credit bid shall be subject to the applicable provisions of any applicable intercreditor agreement.

28.    Proceeds of Subsequent Financing.  Subject to the Carve-Out in all respects, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) or in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Final DIP Order and the DIP Loan Documents.

29.    <u>Cash Collection</u>.  Subject to the Carve-Out in all respects, from and after the date of the entry of the Interim DIP Order, the Debtors shall maintain cash management in accordance with the DIP Loan Documents and the Cash Management Order (as defined below). Unless authorized by this Final DIP Order or otherwise agreed to in writing by the DIP Agent (acting at the direction of the Required DIP Lenders) and the Successor Administrative Agent (acting at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement)), the Debtors shall maintain no accounts except those identified in the *Order Authorizing the Debtors to Continue to (I) Operate Their Cash Management System, (II) Use Existing Checks and Business Forms, and (III) Honor Certain Intercompany Arrangements* [Docket No. 87] (the "<u>Cash Management Order</u>").  Subject to this Final DIP Order, the Debtors and the financial institutions where the Debtors' maintain deposit accounts (as identified in the Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the DIP Agent in accordance with the DIP Loan Documents.

30.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Pre-Petition Secured Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Loan Documents or the Pre-Petition Loan Documents, as applicable; and (b) maintain the cash management system consistent with the terms and conditions of the Cash Management Order, or as otherwise required by the DIP Loan Documents.

31.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Pre-Petition Collateral

other than in the ordinary course of business without the prior written consent of the DIP Agent (acting at the direction of the Required DIP Lenders) and the Successor Administrative Agent (acting at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement)), it being understood that no such consent shall be implied, from any other action, inaction or acquiescence by any DIP Party or any Pre-Petition Secured Party, except as otherwise provided for in the DIP Loan Documents.

32.     <u>Termination Date</u>.  On the applicable Termination Date (defined below) and except as otherwise provided in accordance with this Final DIP Order, (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 40 with respect to the Carve-Out, and (b) all authority to use Cash Collateral shall cease.

33.     <u>Events of Default</u>. The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"), in all circumstances upon written notice to the Debtors: (a) the failure of the Debtors to perform any of the terms, provisions, conditions, covenants or obligations under this Final DIP Order, including, without limitation, failure to make any payment under this Final DIP Order when due; or (b) the occurrence and continuation of an "Event of Default" under, and as defined in, the DIP Credit Agreement.

34.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Bankruptcy Court, but subject to the terms of this Final DIP Order,

including the Carve-Out in all respects: (a) the DIP Agent may (or shall at the request of the Required DIP Lenders) declare (any such declaration shall be referred to herein as a "Termination Declaration") (1) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (2) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (4) that the application of the Carve-Out has occurred following delivery of the Carve-Out Trigger Notice to the Borrower; and (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Loan Documents (the date which is the earliest to occur of any date a Termination Declaration is delivered by the DIP Agent shall be referred to herein as the "Termination Date").   The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee (if appointed), counsel to the Successor Administrative Agent, counsel to the Ad Hoc Group of Noteholders, and the U.S. Trustee.   The automatic stay in the Cases otherwise applicable to the DIP Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (such five (5) business day period, the "Remedies Notice Period") the DIP Parties may terminate the use of Cash Collateral if the Event of Default has not been cured, waived or otherwise stayed or invalidated by the Bankruptcy Court. During the Remedies Notice Period (a) the Debtors shall be entitled to continue to use Cash Collateral in accordance with the Budget; and (b) the Debtors, the Ad Hoc Group of Noteholders or the Committee, if any, may request an expedited hearing before the Bankruptcy Court to contest whether an Event of Default has occurred and/or is continuing, seek

nonconsensual use of Cash Collateral or seek any other relief.    The DIP Parties and/or Pre-Petition Secured Parties may not repossess, foreclose or seize any DIP Collateral without filing a motion on expedited notice and obtaining an order from this Bankruptcy Court authorizing such activity.  The DIP Parties and/or the Pre-Petition Secured Parties' burden of proof to establish such relief shall be the burden imposed by Section 362 of the Bankruptcy Code and shall not be altered by the terms of this Final DIP Order or the DIP Loan Documents.

35.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final DIP Order</u>.  The DIP Parties and the Pre-Petition Secured Parties have acted in good faith in connection with this Final DIP Order and are entitled to rely upon the protections granted herein and by Section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Final DIP Order and the record made during the Interim Hearing and the Final Hearing, in the event any or all of the provisions of this Final DIP Order are hereafter modified, amended or vacated by a subsequent order of this Bankruptcy Court or any other court, the DIP Parties and the Pre-Petition Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.

36.    <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay all reasonable and documented fees and expenses of (x) the DIP Agent, the Structuring Advisor, the Arranger and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Loan Documents and this Final DIP Order, whether or not the transactions contemplated hereby are consummated, and (y) the Initial Administrative Agent, the Successor Administrative Agent and the other Pre-Petition Secured Parties (including the reasonable and documented fees and

expenses of counsel and financial advisors, but limited with respect to the fees, expenses, and disbursements of counsel and financial advisors to the Pre-Petition Term Loan Lenders to those of the counsel and financial advisors to the Ad Hoc Lender Group (as defined in the Restructuring Support Agreement)) as provided in this Final DIP Order. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (x) the DIP Agent, the Structuring Advisor, the Arranger or the DIP Lenders in connection with or with respect to the DIP Facility, or (y) the Pre-Petition Secured Parties in connection with or with respect to the Pre-Petition Secured Facilities, are, in each case, hereby approved in full on a final basis. Professionals for the DIP Agent, the Structuring Advisor, the Arranger, the DIP Lenders, the Initial Administrative Agent, the Successor Administrative Agent and the Pre-Petition Term Loan Lenders (including, without limitation, the Ad Hoc Lender Group (as defined in the Restructuring Support Agreement)) (collectively, the "Lender Professionals") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to this Court, the U.S. Trustee, any Committee or any other party in interest. Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for any Committee, and such other parties as this Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtors, U.S. Trustee or any Committee object to the reasonableness

of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices (the "Review Period"), then the Debtors, United States Trustee, or the Committee, as the case may be, shall file with this Court and serve on such Lender Professional an objection (the "Fee Objection"), and any failure by any such party to file a Fee Objection within the Review Period shall constitute a waiver of any right of such party to object to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  If no written objection is received by 12 p.m., prevailing Central Time, on the end date of the Review Period, the Debtors shall pay such invoices promptly. If an objection to a Lender Professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice and the Bankruptcy Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.

37.    Budget.  The Budget is approved on a final basis and the proceeds of the DIP Facility and Cash Collateral under this Final DIP Order shall be used by the Debtors in accordance with the Budget, this Final DIP Order and the DIP Loan Documents. Other than with respect to the Carve-Out, none of the DIP Lenders', DIP Agent's, the Pre-Petition Term Loan Lenders', the Initial Administrative Agent's, or the Successor Administrative Agent's consent (if any) to, or acknowledgement of, the Budget shall be construed as consent to use the proceeds of the DIP Facility or Cash Collateral beyond the respective maturity dates set forth in the DIP Loan Documents and this Final DIP Order, regardless of whether the aggregate funds shown on the

Budget have been expended.  Notwithstanding anything to the contrary herein, nothing in the Budget, this Final DIP Order or the DIP Loan Documents shall be construed as a cap or limitation on the use of DIP Collateral (including Cash Collateral) to fund obligations benefitting from the Carve-Out.

38.   <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Parties in accordance with the terms and conditions of the DIP Loan Documents.

39.   <u>Proofs of Claim</u>.  None of the DIP Parties or the Pre-Petition Secured Parties will be required to file proofs of claim in any of the Cases or Successor Cases for any claim arising under the DIP Documents or the Pre-Petition Loan Documents. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Final DIP Order shall be deemed to constitute a timely filed proof of claim for the DIP Parties and the Pre-Petition Secured Parties with regard to all claims arising under the DIP Documents or the Pre-Petition Loan Documents.

40.   <u>Carve-Out</u>.  Each of the DIP Liens, the DIP Superpriority Claims, the Pre-Petition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out.

(i)   <u>Carve-Out</u>.  "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses up to $100,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim or final compensation order, all unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant

to Section 327, 328 or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any Committee (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") appointed in the Cases pursuant to Section 1103 of the Bankruptcy Code (all such unpaid fees and expenses of the Professional Persons, the "Professional Fees") at any time before or on the first business day after delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice and without regard to whether such fees and expenses are provided for in the Budget; and (iv) Professional Fees incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice (including transaction fees or success fees earned or payable to a Professional Person), to the extent allowed at any time, whether by interim order, procedural order or otherwise in an aggregate amount not to exceed $3,000,000 with respect to Professional Persons (the amount set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap"). For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, counsel to the Ad Hoc Group of the Noteholders, the U.S. Trustee and lead counsel to the Committee (if any), which notice may be delivered following the Termination Date and expiration of the Remedies Notice Period, stating that the Post-Carve-Out Trigger Notice Cap has been invoked and that the Debtors' ability to pay Professional Fees is subject to and limited by the Carve-Out.  On the day on which a Carve-Out Trigger Notice is received by the Debtors, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand to transfer to the Professional Fees Account (as defined below) cash in an amount equal to all obligations benefitting from the Carve-Out. Following delivery of a Carve-Out Trigger Notice, the DIP Agent shall deposit into the

Professional Fees Account any cash swept or foreclosed upon (including cash received as a result of the sale or other disposition of any assets) until the Professional Fees Account has been fully funded in an amount equal to all obligations benefitting from the Carve-Out. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final DIP Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to all obligations benefitting from the Carve-Out.  Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Professional Fees Account shall not constitute DIP Loans, (ii) the failure of the Professional Fees Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (iii) in no way shall the Carve-Out, Professional Fees Account, or the Budget or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by the Bankruptcy Court at any time (whether by interim order, final order, or otherwise). No portion of the Carve-Out, any Cash Collateral, any other DIP Collateral, or any proceeds of the DIP Facility, including any disbursements set forth in the Budget or obligations benefitting from the Carve-Out, shall be used for the payment of Professional Fees, disbursements, costs or expenses incurred by any person, including, without limitation, any Committee, in connection with challenging the DIP Agent's or the DIP Lenders' liens or claims, preventing, hindering or delaying any of the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral, or initiating or prosecuting any claim or action against the DIP Agent or any DIP Lender, unless otherwise ordered by the Bankruptcy Court, other than with respect to challenging a Termination Declaration and/or seeking a determination that an Event of Default has not occurred or is not

continuing. Proceeds from the DIP Facility and/or Cash Collateral not to exceed $25,000 in the aggregate (the "Investigation Budget Cap") may be used on account of Professional Fees incurred by Committee Professionals (if any) in connection with the investigation of avoidance actions or any other claims or causes of action (but not the prosecution of such actions) on account of the Pre-Petition Secured Facilities (but not the DIP Facility), which obligations will benefit from the Carve-Out in an amount not to exceed the Investigation Budget Cap to the extent unpaid as of delivery of a Carve-Out Trigger Notice. Notwithstanding anything to the contrary herein, any fees, expenses or costs incurred by the Committee Professionals (if any) in excess of the Investigation Budget Cap or in excess of the amount budgeted for the Professional Persons set forth in the Budget shall not constitute an allowed administrative expense claim, including for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code.

(ii)     Professional     Fees     Account.     The     Debtors     shall (i) contemporaneously with the initial funding of the DIP Facility, transfer cash proceeds from the DIP Facility in an amount equal to the total budgeted weekly Professional Fees for the first two weekly periods set forth in the Budget and (ii) thereafter on a weekly basis transfer cash proceeds from the DIP Facility or cash on hand in an amount equal to the total budgeted weekly Professional Fees for the next unfunded week set forth in the Budget, in each case into a segregated account not subject to the control of the DIP Agent, any DIP Lender, or any Pre-Petition Secured Party (the "Professional Fees Account").  The Debtors shall be authorized to use funds held in the Professional Fees Account to pay Professional Fees as they become allowed and payable pursuant to any interim or final orders of the Bankruptcy Court or otherwise; provided that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court), any funds remaining in the Professional

Fees Account shall revert to the Debtors for use in a manner not inconsistent with this Final DIP Order; provided further that the Debtors' obligations to pay allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account. Funds transferred to the Professional Fees Account shall be held in trust for the Professional Persons, including with respect to obligations arising out of the Carve-Out. Funds transferred to the Professional Fees Account shall not be subject to any liens or claims granted to the DIP Lenders herein or any liens or claims granted as adequate protection, shall not constitute DIP Collateral and shall not constitute Cash Collateral; provided that the DIP Collateral shall include the Debtors' reversionary interest in funds held in the Professional Fees Account, if any, after all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court).

(iii)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The DIP Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Professional Persons incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final DIP Order or otherwise shall be construed to obligate any DIP Party in any way to pay compensation to, or to reimburse expenses of, any of the Professional Persons, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement. Notwithstanding any provision in this paragraph 40 to the contrary, no portion of the Carve-Out, any Cash Collateral, any DIP Collateral, or any proceeds of the DIP Facility that are subject to the DIP Superpriority Claim (including any disbursements set forth in the Budget or obligations benefitting from the Carve-Out) shall be utilized for the payment of professional fees and disbursements to the extent restricted under paragraph 41 hereof. Nothing

herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases or any Successor Cases, or of any other person or entity, or shall affect the right of any DIP Party to object to the allowance and payment of any such fees and expenses.

41.      Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Out. Except as otherwise permitted in this Final DIP Order or the DIP Loan Documents, the DIP Facility, the DIP Collateral, the Pre-Petition Collateral, the Cash Collateral and the Carve-Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Parties' or the Pre-Petition Secured Parties' enforcement or realization upon any of the DIP Collateral or Pre-Petition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral (other than dispositions permitted under the DIP Loan Documents) without the consent of the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders); (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders); (d) incurring Indebtedness (as defined in the DIP Credit Agreement) without the prior consent of the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders), except to the extent permitted under the DIP Loan Documents; (e) seeking to amend or modify any of the rights granted to the DIP Parties or the Pre-Petition Secured Parties under this Final DIP Order, the DIP Loan Documents or the Pre-Petition Loan Documents in a manner adverse to such parties, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Pre-Petition Liens, the Pre-Petition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Pre-Petition Collateral, or

any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Pre-Petition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, applicable state law equivalents or other actions to recover or disgorge payments against any of the DIP Parties, the Pre-Petition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees (including counsel and financial advisors to the Ad Hoc Lender Group (as defined in the Restructuring Support Agreement)); (h) litigating, objecting to, challenging, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Pre-Petition Liens, the Pre-Petition Secured Obligations or any other rights or interests of the DIP Parties or the Pre-Petition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Pre-Petition Secured Obligations, *provided that* the foregoing restriction shall not apply to challenging the validity of a Termination Declaration and/or seeking a determination that an Event of Default has not occurred or is not continuing.

42.     <u>Effect of Stipulations on Third Parties</u>.  The Debtors' Stipulations became binding upon the Debtors in all circumstances upon entry of the Interim DIP Order.  The Debtors' Stipulations shall be binding upon the Debtors' estates and each other party-in-interest, including the Committee, if any, except to the extent and only to the extent such Committee or any other party in interest with standing (including any chapter 11 trustee) other than the Debtors (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), first, commences, by the earliest of (x) with respect to any Committee, sixty (60) calendar days after the formation of any

Committee, (y) with respect to other parties-in-interest with requisite standing other than the Debtors or any Committee, forty-five (45) calendar days following the date of entry of the Interim DIP Order, and (z) with respect to either the Committee or any other parties-in-interest with requisite standing five (5) calendar days prior to the confirmation hearing with respect to a plan (such time period established by the earliest of clauses (x), (y) and (z), as the same may be extended in accordance with this Paragraph 42, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date") , a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge").  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases (and after the dismissal of these Cases or any Successor Cases), (i) any and all payments made to or for the benefit of the Pre-Petition Secured Parties or otherwise authorized by the Interim DIP Order or

this Final DIP Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Pre-Petition Secured Obligations shall be deemed to be fully allowed claims within the meaning of Section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.   The Challenge Period may be extended only (i) (A) with respect to the Pre-Petition Revolving Facility, with the written consent of the Initial Administrative Agent and (B) with respect to the Pre-Petition Term Loan Facility, the Successor Administrative Agent, acting at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement) or (ii) by order of the Court for good cause shown.   Notwithstanding any provision to the contrary herein, nothing in this Final DIP Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to

the Challenge Period Termination Date as required under this Paragraph 42 or to require or permit an extension of the Challenge Period Termination Date.

43.    <u>No Third-Party Rights</u>.  Except as explicitly provided for herein or in any of the DIP Loan Documents, this Final DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.   In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final DIP Order or the DIP Loan Documents, the DIP Parties, and the Pre-Petition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

44.    <u>Section 506(c) Claims</u>.  As a further condition of the DIP Facility and any obligation of the DIP Parties to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Parties to the payment of the Carve-Out to the extent provided herein and the consent of the Pre-Petition Secured Parties of the priming of the Pre-Petition Liens by the DIP Facility and the use of Cash Collateral) (a) no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Parties or the Pre-Petition Secured Parties with respect to the DIP Collateral or the Pre-Petition Collateral, in each case pursuant to Section 105 or Section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Parties or the Pre-Petition

Secured Parties, as applicable and (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Parties or the Pre-Petition Secured Parties.

45.     <u>No Marshaling</u>.  The DIP Parties and Pre-Petition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral, as applicable, *provided* that the DIP Parties and Pre-Petition Secured Parties shall first satisfy their claims from DIP Collateral or Pre-Petition Collateral other than Avoidance Proceeds before satisfying such claims from Avoidance Proceeds.

46.     <u>Section 552(b)</u>.  The Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral.

47.     <u>Access to DIP Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that a Termination Date has occurred and is continuing, the DIP Agent may (or shall at the direction of the Required DIP Lenders), subject to the applicable notice provisions in this Final DIP Order and any separate applicable agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlord thereunder, <u>provided</u> that the DIP Agent shall be obligated

only to pay rent of the Debtors that first accrues after the written notice referenced above is delivered and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis.  Nothing contained herein shall require the DIP Agent or any other DIP Party to assume any lease as a condition to the rights afforded in this paragraph.

48.    Exculpation. Nothing in this Final DIP Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Party or Pre-Petition Secured Party any liability for any claims arising from the pre-petition or postpetition activities of the Loan Parties and the Debtors, including with respect to the operation of their businesses, in connection with their restructuring efforts or administration of these Cases. In addition, (a) the DIP Parties shall not in any way or manner be liable or responsible for: (i) the safe-keeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors.

49.    DIP Parties Release.  From and after the date of the entry of the Interim DIP Order, the Debtors, on their own behalf and their estates, forever and irrevocably: (i) release, discharge, and acquit the DIP Parties, solely in their capacity as DIP Parties, and each of their former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors-in-interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or relating to the negotiation and entry

into the DIP Loan Documents; and (ii) waive, discharge and release any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP Liens and the DIP Obligations.

50.     [Reserved].

51.     Insurance Proceeds and Policies.  From and after the date of the entry of the Interim DIP Order and to the fullest extent provided by applicable law, the DIP Agent, for the benefit of itself and the DIP Lenders, and the Successor Administrative Agent, for the benefit of itself and the Pre-Petition Term Loan Lenders, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

52.     Joint and Several Liability.  Nothing in this Final DIP Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, provided, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and the DIP Loan Documents.

53.     Rights Preserved.  The entry of this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the right of any party (including, but not limited to, the DIP Parties and the Pre-Petition Secured Parties) to object to the allowance of any professional fees or expenses of any Professional Person, which rights are expressly preserved; (b) the DIP Parties' and Pre-Petition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (c) any of the rights of any of the DIP Parties and the Pre-Petition Secured Parties under the Bankruptcy Code or under applicable  non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases

or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a

Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions

of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (d)  any other rights,

claims or privileges (whether legal, equitable or otherwise) of any of the DIP Parties or Pre-

Petition Secured Parties.  The entry of this Final DIP Order is without prejudice to, and does not

constitute an express or implicit waiver of, the Debtors', a Committee's (if appointed) or any

party-in-interest's right to oppose any of the relief requested in accordance with the immediately

preceding sentence except as expressly prohibited in this Final DIP Order.  Entry of this Final

DIP Order is without prejudice to any and all rights of the Debtors, a Committee (if appointed) or

any other party-in-interest with respect to any other position which any party-in-interest deems

appropriate to raise in the Debtors' Cases.

         54.   <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Parties or

Pre-Petition Secured Parties to seek relief or otherwise exercise their rights and remedies under

this Final DIP Order, the DIP Loan Documents, the Pre-Petition Loan Documents or applicable

law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder,

or otherwise.

         55.   <u>Binding Effect of Final DIP Order</u>.  Except as provided in paragraph 42 of

this Final DIP Order, immediately upon entry of this Final DIP Order by this Court, the terms

and provisions of this Final DIP Order shall become valid and binding upon and inure to the

benefit of the Debtors, the DIP Parties, the Pre-Petition Secured Parties, all other creditors of any

of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases

and all other parties-in-interest and their respective successors and assigns, including any trustee

or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon

dismissal of any Case or Successor Case; provided that neither the DIP Parties nor the Pre-Petition Secured Parties shall have an obligation to permit the use of DIP Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.  The rights, benefits, and protections of the Initial Administrative Agent and the Successor Administrative Agent set forth in Article IX of the Pre-Petition Loan Agreement remain in full force and effect as between the Pre-Petition Secured Parties.

56.    <u>No Modification of Final DIP Order</u>.  Until and unless the DIP Obligations and the Pre-Petition Secured Obligations have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly, without the prior written consent of (A) the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders), (B) with respect to any provisions that impact the legal or economic rights of the Initial Administrative Agent and the Pre-Petition Revolving Lenders, the Initial Administrative Agent and (C) with respect to any provisions that impact the legal or economic rights of the Successor Administrative Agent and the Pre-Petition Term Loan Lenders, the Successor Administrative Agent, acting at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement), any material modification, stay, vacatur or amendment to this Final DIP Order.

57.    <u>Continuing   Effect   of   Pre-Petition   Intercreditor   Agreement</u>. Notwithstanding the repayment of the Pre-Petition Revolving Obligations, the Debtors and the

Pre-Petition Secured Parties each shall be bound by, and in all respects the Pre-Petition Secured Facilities shall be governed by, and be subject to all the terms, provisions and restrictions of the Pre-Petition Intercreditor Agreement.

58.     <u>Final DIP Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and this Final DIP Order, the provisions of this Final DIP Order shall govern and control.

59.     <u>Discharge</u>.   Except as otherwise agreed in writing by the DIP Agent (acting at the direction of the Structuring Advisor and the Required DIP Lenders), the Successor Administrative Agent, acting at the direction of the "Required Lenders" (as defined in the Pre-Petition Loan Agreement), and the Initial Administrative Agent (with respect to the adequate protection granted to the Initial Administrative Agent and the Pre-Petition Revolving Lenders), the DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization.

60.     <u>Survival</u>.  The provisions of this Final DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Bankruptcy Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final DIP Order, including the claims, liens, security interests and other protections granted to the DIP Parties and the Pre-Petition Secured Parties pursuant to this

Final DIP Order and the DIP Loan Documents, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final DIP Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Loan Documents and this Final DIP Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP Credit Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated; and (ii) in respect of the Pre-Petition Secured Facilities, all of the Pre-Petition Secured Obligations pursuant to the Pre-Petition Loan Documents and this Final DIP Order, have been indefeasibly paid in full in cash.  If any or all of the provisions of this Final DIP Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Payments incurred prior to the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens and the Adequate Protection Superpriority Claims.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any Adequate Protection Payments made by the Debtors prior to the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Final DIP Order, and the Pre-Petition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted herein.

61.    <u>Payments Free and Clear.</u>  Any and all payments or proceeds remitted to the Initial Administrative Agent, the Successor Administrative Agent or any of the other Pre-Petition Secured Parties pursuant to the provisions of this Final DIP Order shall be irrevocable,

received free and clear of any claim, charge, assessment or other liability, including, any such claim or charge arising out of or based on, directly or indirectly, Sections 506(c) and 552(b) of the Bankruptcy Code (whether asserted or asserted by, through or on behalf of the Debtors).

62.    _Necessary Action_.   The Debtors are authorized to take any and all such actions as are necessary or appropriate to implement the terms of this Final DIP Order.

63.    _Bankruptcy Rules_.   The requirements of Bankruptcy Rules 4001, 6003 and 6004, and the applicable Local Bankruptcy Rules, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

64.    _Nunc Pro Tunc Effect of this Final DIP Order; Enforceability_.   This Final DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon entry thereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final DIP Order.

65.    _Retention of Jurisdiction_.   This Court has and will retain jurisdiction to enforce this Final DIP Order according to its terms.

66.    _Interim DIP Order_.   Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim DIP Order shall remain in effect and are hereby ratified by this Final DIP Order.   In the event of any inconsistency between the terms of this Final DIP Order and the terms of the Interim DIP Order, the terms of this Final DIP Order shall govern.

**Signed:  August 06, 2019**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Budget**

**Project Secure**
**Cash Flow Forecast for the Forthcoming 13-Week Period**

| Consolidated Weekly Cash Flow Forecast | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| ($ in '000s) | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT | FCT |
| For the Week Ending: | Jul-05 | Jul-12 | Jul-19 | Jul-26 | Aug-02 | Aug-09 | Aug-16 | Aug-23 | Aug-30 | Sep-06 | Sep-13 | Sep-20 | Sep-27 |
| | File | | | | | Confirmation | | | | | Emerge | | |
| Receipts | 10,148 | 9,319 | 10,228 | 9,091 | 10,120 | 9,108 | 10,156 | 9,563 | 10,247 | 9,707 | 10,071 | 9,740 | 10,374 |
| **Total Collections** | 10,148 | 9,319 | 10,228 | 9,091 | 10,120 | 9,108 | 10,156 | 9,563 | 10,247 | 9,707 | 10,071 | 9,740 | 10,374 |
| Wages and Benefits | 200 | 2,432 | 525 | 2,429 | 275 | 2,929 | 153 | 2,429 | 150 | 2,437 | 161 | 3,449 | 158 |
| Inventory, Interface/License & Marketing | 2,302 | 4,276 | 2,537 | 1,599 | 1,046 | 4,201 | 3,136 | 1,339 | 1,958 | 4,122 | 2,234 | 933 | 1,794 |
| Dealers and Service Dealers | 2,950 | 3,906 | 4,626 | 5,722 | 5,551 | 4,287 | 4,736 | 5,695 | 4,949 | 3,154 | 3,297 | 3,865 | 3,705 |
| Taxes | 10 | 19 | 28 | 37 | 1,550 | 9 | 19 | 28 | 1,515 | 10 | 19 | 28 | 38 |
| IT and Other Disbursements | 1,157 | 1,888 | 3,218 | 3,523 | 1,200 | 3,170 | 2,720 | 2,676 | 1,426 | 1,803 | 1,897 | 2,731 | 1,379 |
| **Total Operating Disbursements** | 6,619 | 12,521 | 10,934 | 13,310 | 9,622 | 14,595 | 10,763 | 12,166 | 9,998 | 11,525 | 7,607 | 11,007 | 7,072 |
| **Operating Cash Flow** | 3,529 | (3,203) | (706) | (4,218) | 498 | (5,487) | (608) | (2,602) | 248 | (1,819) | 2,464 | (1,267) | 3,302 |
| Debt Service[1] | (15,665) | - | - | - | (1,580) | - | - | - | (1,785) | - | (23,212) | - | - |
| Other Non-Operating Cash Flow[2] | (10,130) | - | - | 1,030 | - | 250 | - | - | - | - | - | - | - |
| Rights Offering Cash Proceeds | - | - | - | - | - | - | - | - | - | - | 200,000 | - | - |
| Term Loan Repayment | - | - | - | - | - | - | - | - | - | - | (150,000) | - | - |
| Transfer From/(To) Ascent | - | - | - | - | - | - | - | - | - | - | 3,500 | - | - |
| Restructuring Professional Fees | (700) | (4,384) | (967) | (967) | (967) | (3,621) | (967) | (967) | (967) | (967) | (10,323) | - | - |
| **Non-Operating Receipts / (Disbursements)** | (26,495) | (4,384) | (967) | 63 | (2,546) | (3,371) | (967) | (967) | (2,752) | (967) | 19,965 | - | - |
| **Cash Flow Before Revolver/DIP** | (22,966) | (7,586) | (1,673) | (4,155) | (2,049) | (8,858) | (1,575) | (3,569) | (2,504) | (2,785) | 22,429 | (1,267) | 3,302 |
| Revolver Borrowing/Repayment | (181,400) | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Borrowing/Repayment | 210,000 | (1,610) | 1,673 | 4,155 | 2,049 | 8,858 | 1,575 | 3,569 | 2,504 | 2,785 | (235,558) | - | - |
| Exit Facility Borrowing/Repayment | - | - | - | - | - | - | - | - | - | - | 213,129 | 1,267 | (3,302) |
| **Change in Cash** | 5,634 | (9,196) | - | - | - | - | - | - | - | - | - | - | - |
| **Beginning Cash** | 8,562 | 14,196 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Change in Cash | 5,634 | (9,196) | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash** | 14,196 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Beginning Pre-Petition Revolver Balance** | 181,400 | - | - | - | - | - | - | - | - | - | - | - | - |
| Revolver Borrowing/Repayment | (181,400) | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Pre-Petition Revolver Balance** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Beginning DIP Balance** | - | 210,000 | 208,390 | 210,064 | 214,219 | 216,267 | 225,125 | 226,700 | 230,269 | 232,773 | 235,558 | - | - |
| DIP Borrowings/Repayment | 210,000 | (1,610) | 1,673 | 4,155 | 2,049 | 8,858 | 1,575 | 3,569 | 2,504 | 2,785 | (235,558) | - | - |
| **Ending DIP Balance** | 210,000 | 208,390 | 210,064 | 214,219 | 216,267 | 225,125 | 226,700 | 230,269 | 232,773 | 235,558 | - | - | - |
| **Beginning Exit Facility Balance** | - | - | - | - | - | - | - | - | - | - | - | 213,129 | 214,396 |
| Exit Facility Borrowing/Repayment | - | - | - | - | - | - | - | - | - | - | 213,129 | 1,267 | (3,302) |
| **Ending Exit Facility Balance** | - | - | - | - | - | - | - | - | - | - | 213,129 | 214,396 | 211,095 |

[1] Debt Service the week of 7/5 includes Q2 Term Loan interest and Pre-Petition Revolver interest through repayment; the weeks of 8/2 and 8/30 comprise of only DIP interest, and payments at emergence include Term Loan and DIP interest

[2] Non-Operating Cash Flow includes 1) $250 thousand Bank of America indemnity fee paid the week of 7/5 and remitted back to MONI at confirmation, 2) $1.03 million posting of cash collateralization of LCs the week of 7/5 and remitted back to MONI the week of 7/26, and 3) $8.85 million fee to the DIP/Exit Provider the week of 7/5

All debt balances above exclude $1 million of LCs outstanding